FILED

2010 MAY 24  PM 4: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  MITCHELL L. ABDALLAH,  #231804
   Abdallah Law Group
2  1006 4TH STREET, 4TH FLOOR
   SACRAMENTO, CA 95814
3  TEL:/ (916) 446-1974
   FAX:/ (916) 446-3371
   MITCH@ABDALLAHLAW.NET
4

5  Attorney for Plaintiff,
   LILLIE MAE WASHINGTON
6

7              UNITED STATES DISTRICT COURT
8
9            CENTRAL DISTRICT OF CALIFORNIA

10  LILLIE MAE WASHINGTON,              Case No. 2:09-cv-08213-SJO-RZ
11              Plaintiff,
12  vs.                                 FIRST AMENDED COMPLAINT FOR
                                        VIOLATION OF TILA; VIOLATION OF
13  HOME LOANS DIRECT, Inc., a Delaware  RESPA; RESCISSION OF CONTRACT;
    Corporation dba DE HDL, Inc., its    PREDATORY LENDING;
14  successors and assignees, OCWEN LOAN  DECLARATORY RELIEF; INJUNCTIVE
15  SERVICING, LLC, a Delaware           RELIEF; UNJUST ENRICHMENT;
    Corporation, MORTGAGE ELECTRONIC     UNFAIR COMPETITION; FRAUD;
16  REGISTRATION SYSTEM, Inc., Hisham    NEGLIGENT MISREPRESENTATION;
    Desouki, Christopher Cox, Jonathan Annett, VIOLATION OF CONSUMER LENDING
17  LODES CAPITAL ESCROW Inc., Nikki    REMEDIES ACT; BREACH OF
18  Hall, FOX FIELDS FINANCIAL, Inc. ,   FIDUCIARY DUTIES; AND FINANCIAL
    Christopher Fox, WESTERN             ABUSE OF ELDERS
19  PROGRESSIVE, LLC and DOES 1-10
20  inclusive,

21              Defendants.
22

23

24          FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
25

26

27                              - 1 -
28  _____        _____
    Amended Complaint              Lillie Mae Washington v. Home Loans Direct, Inc., et. al.

## I. PRELIMINARY STATEMENT

1.      This action arises as a result of predatory and abusive mortgage lending practices that led to the threatened foreclosure of the home of LILLIE MAE WASHINGTON (herein "Plaintiff").   Plaintiff was fraudulently induced to refinance to an adjustable rate mortgage that she did not knowingly agree to accept.   Now, Plaintiff is faced with an interest rate that has adjusted upward causing a significantly larger monthly premium than the one she agreed to pay.

2.      This Complaint is filed under TILA and related laws to enforce Plaintiff's right to rescind his mortgage loan, to cease the default process initiated on Plaintiff's home, and to recover actual and statutory damages and reasonable attorney's fees and costs.

## II. JURISDICTION AND VENUE

3.      Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e), 12 U.S.C. § 2614 and 28 U.S.C. § 1331.

4.      The transactions and events that are the subject matter of this complaint all occurred within the County of Los Angeles, State of California.   Jurisdiction to consider Plaintiff's state law claims is conferred on this Court by 28 U.S.C. § 1367.12.

## III. PARTIES

5.      Plaintiff LILLIE MAE WASHINGTON is a resident of Los Angeles County in the State of California.

6.      Defendant HOME LOAN DIRECT, INC. is a Delaware corporation doing business in California as DE HDL, Inc.  On information and belief, DE HDL Inc. is and at

all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California.

7.      Defendant OCWEN FINANCIAL CORPOSATION is a Delaware corporation doing business as OCWEN LOAN SERVICING, LLC.  On information and belief, OCWEN LOAN SERVICING, LLC is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California.

8.      Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a corporation organized and existing under the laws of the State of Delaware, with its headquarters at 1595 Spring Hill Road and servicing rights in mortgages and serves as mortgagee of record as nominee for the lender and lender's successors and assigns.

9.      On information and belief, Defendant Hisham Desouki, at all times mentioned, was licensed or had license rights as a real estate salesperson, and was employed by or was an agent of Defendant HOME LOAN DIRECT, INC.

10.     On information and belief, Defendant Christopher Cox, at all times mentioned was licensed or had license rights as a real estate salesperson, and was employed by or was an agent of Defendant HOME LOAN DIRECT, INC.

11.     Defendant Jonathan Annett was employed by or was an agent of HOME LOANS DIRECT, INC.

12.     Defendant LODES CAPITAL ESCROW, INC. is a California corporation with an office in Santa Ana, California and at all times herein mentioned was, a corporation,

- 3 -

association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California.

13.     Defendant Nikki Hall, at all times mentioned, was licensed or had license rights as an escrow agent under the laws of the State of California, and was employed by or was an agent of Defendant LODES CAPITAL ESCROW, INC.

14.     Defendant FOX FIELDS FINANCIAL, INC. is a California corporation with an office in Beverly Hills, California and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California

15.     On information and belief, Defendant Christopher Fox was employed by or was an agent of FOX FIELDS FINANCIAL, INC.

16.     On information and belief, Defendant WESTERN PROGRESSIVE, LLC is and at all times herein mentioned was, a corporation, association, partnership, joint venture, and/or sole proprietorship organized and existing under the laws of the State of California.

17.     The true names and capacities of Defendant DOES 1 through 10, inclusive are unknown to Plaintiff who therefore sues these Defendants by fictitious names.  Plaintiff is informed and believe and thereupon allege that each of Defendants designated herein as a fictitiously named defendant and is, in some manner, responsible for the events and happenings herein referred to and caused the damage to Plaintiff as herein alleged.  Plaintiff will amend the complaint to allege such true names an capacities when these facts are ascertained.

- 4 -

18.     Plaintiff is informed and believes, and thereupon alleges, that at all times herein mentioned, each of the Defendants was acting as a principle, agent, servant or employee of the remaining co-Defendants and were at all times acting within the course and scope of said agency, service or employment.

## IV. FACTS

19.     Plaintiff is a 94 year old woman that has been living in her home for about 36 years.  She owns property located at 2315, 2315 1/4 and 2315 1/2 Houser Boulevard, Los Angeles, California.

20.     On or about October, 2006, an agent of AMERICAN HOME LOAN communicated with Hobert Washington, Plaintiff's recently deceased son.  Without the knowledge of Plaintiff, the agent persuaded Hobert Washington to obtain a loan from AMERICAN HOME LOAN.  On information and belief, Hisham Desouki had a face-to-face meeting with Hobert Washington to complete his residential loan application.  Prior to his death, Hobert Washington was suffering from Alzheimer's disease and his cognitive impairment would have been immediately visible and obvious to anyone who spoke and interacted with him.  Despite this, AMERICAN HOME LOAN its agent had Hobert Washington sign loan documents without having any immediate family members present to help him.

21.     On or about October, 2006, AMERICAN HOME LOAN agent Jonathan Annett came to Plaintiff's home with loan documents already prepared.  At the meeting with Mr. Annett was Plaintiff, Plaintiff's daughter, Saundra Warren, and Plaintiff's son, Bobby

- 5 -

Washington.  Hobert Washington was not present at the meeting.  This is the only meeting Mr. Annett had with Plaintiff.  There were no discussions between Mr. Annett and Plaintiff either before or after the October, 2006 meeting.

22.    At the meeting, Mr. Annette stressed to Plaintiff that she "needed to get out of" their existing mortgage.   He represented to Plaintiff that she would receive $80,000 in cash, that the payments would not commence until June, 2007, and that the monthly mortgage payment would be between $600 to $700 per month.  He also stated that the interest rate would be about 6 percent and that the loan would be for a fixed rate.

23.    Plaintiff relied upon these representations made by Mr. Annett and thus signed the loan documents at the meeting in October, 2006.  There was no notary present when she signed the documents and Plaintiff did not sign a notary log.

24.    Mr. Annett failed to clearly and conspicuously disclose the key provision of Plaintiff's mortgage, including but not limited to such details as the interest rate, which adjusted in a very complicated manner, specific loan terms, and the total dollar amount the mortgage would cost over time.

25.    Defendant's loan was structurally unfair and was designed to be difficult for Plaintiff to understand due to its multiple layers of risk and Defendant took no meaningful consideration as to whether Plaintiff could afford to pay the loans.

26.    Mr. Annett did not leave any documents or provide Plaintiff with any copies of documents even though the Washington's specifically asked for copies.  Additionally, Mr. Annett did not provide Plaintiff with the Truth in Lending Act ("TILA") or the Housing and

- 6 -

Urban Development ("HUD") settlement statement as required by law.  Although Mr. Annett stated he would send the loan documents via overnight mail, he never did.

27.     Because Mr. Annett did not provide Plaintiff with the TILA and HUD disclosures, Plaintiff did not have any meaningful opportunity to exercise his right to cancel the loan as provided for under 15 U.S.C. § 1641(c).

28.     AMERICAN HOME LOAN continued to delay giving the Washington's copies of the loan documents.  Shortly after the October, 2006 meeting with Plaintiff, Bobby Washington called AMERICAN HOME LOAN and asked for copies of the documents.  The documents were again not sent.  Later, Bobby Washington called again and spoke with Jonathan Spannagel of AMERICAN HOME LOAN and asked him to provide copies of the documents.

29.     After several requests to produce all documents, AMERICAN HOME LOAN provided Plaintiff with the following two documents.

(1) an undated and unsigned document stated "The loan was just finished for you is just a credit repair loan.  We supplied enough payment for 6 months.  We have paid off all the debt in full so that the credit score will rise.  After the 6 months we will be able to recast the loan to a more comfortable payment."

(2) a handwritten note stating that "I ordered the whole packet from escrow.  It will be here next week then I will send it to you.  Sorry for the Inconvenience [sic] and the misunderstanding.  Everything will be alright."

30.     On or about November 25, 2006, Plaintiff finally received copies of the loan agreement.  A copy of this document is attached hereto as Exhibit A and is incorporated by

this reference as though fully set forth herein.  The Washington's were shocked to learn that the loan payments began in December, 2006 instead of June, 2007 as promised by Mr. Annett.  Plaintiff also received a cash payment of $95,909.25 which was much more than the $80,000 discussed in the meeting with Mr. Annett.  The Washington's were also shocked to learn that the monthly payment on the adjustable rate loan was $2,582.29, which was approximately three times the amount that Mr. Annett informed Plaintiff that she would be required to pay.  Furthermore, they learned the payments were projected to increase to $2,931.25 on December 1, 2008 and to $3,163.01 on December 1, 2011.  The last payment was projected to be $3,161.01.

31.     Because the monthly payments were outside of Plaintiff's budgeted amount, she was forced to use the cash out payment to make the monthly payments on the loan.

32.     On or about September 16, 2008, Plaintiff and her now deceased son, Hobert Washington filed a state court claim against HOME LOANS DIRECT for Fraud, Negligent Misrepresentation, Breach of Fiduciary Duties, Financial Abuse of Elders, Undue Influence, and Violations of the Consumer Legal Remedies Act, and California Business & Professions Code § 17200.

33.     On or about September, 2009, Plaintiff's daughter, Saundra Warren, contacted a representative of Defendant OCWEN LOAN SERVICING LLC to discuss a loan modification with them on behalf of her mother.  Ms. Warren completed and sent a loan modification application to Defendant OCWEN LOAN SERVICING LLC but neither she nor Plaintiff ever heard back from them about the application.

34.     On or about October, 2009, Plaintiff could not continue to pay the overwhelmingly large payments each month and was forced to make her last monthly payment to date on the mortgage.  Plaintiff's inability to pay the monthly loan payment is a direct result of Mr. Annett's misrepresentations about the loan and his failure to provide the required disclosures and copies of the loan documents in a timely fashion.

35.     On or about November 8, 2009, Plaintiff filed a complaint In Pro Se in the United States District Court for the Central District of California asserting all of the same causes of actions appearing this complaint along with a few other causes of action not alleged herein.

36.     On or about April 15, 2010, Defendant WESTERN PROGRESSIVE, LLC began sending Plaintiff Notices of Default.  This practice continues to be conducted in an aggressive and harassing manner as Defendant WESTERN PROGRESSIVE, LLC sends ten of the same notices at a time.  The Notices of Default state that they may set the date for the sale of Plaintiff's property to occur three months from the April 15, 2010 recordation date appearing on the form.

37.     Plaintiff remains in the subject property pending the litigation of these claims. Plaintiff holds Defendant HOME LOAN DIRECT and its agents liable for violations of State and Federal law.

## COUNT I
### Violation of TILA, 15 U.S.C. §1601, *et seq*.

38.     Plaintiffs hereby incorporates by this reference each and every allegation contained in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

- 9 -

39.     Defendants violated TILA by failing to provide Plaintiff with accurate and clear and conspicuous material disclosures required under TILA and not taking into account the intent of the Legislature in approving this statute which was to fully inform borrowers of the pros and  cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend and to advise them to compare similar loan products with other lenders.  It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

40.     Any and all statutes of limitations relating to disclosures and notices required pursuant to 15 U.S.C. §1601, et.seq., were tolled due to the hidden nature of this violation, which did not reveal itself until within the past year.

41.     An actual controversy now exists between Plaintiff, who contends that she has the right to damages for Defendants' violations related to the loan on the subject property alleged in this complaint.

42.     As a direct and proximate result of Defendants' violations, Plaintiff has incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

43.     Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

///

///

///

- 10 -

## COUNT II
### Violation of RESPA, <u>12 U.S.C. §2601, *et seq.*</u>

44.     Plaintiffs hereby incorporates by this reference each and every allegation contained in paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45.     The loan the Plaintiff was a federally-regulated mortgage loan as defined in <u>12 U.S.C. section 2601, *et seq.*</u> ("RESPA"). Housing and Urban Development's ("HUD")\1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transaction under RESPA:

(a) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid, and

(b) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

46.     In applying this test, HUD believes that the total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities or services furnished or performed to determine whether it is legal under RESPA.

47.     Defendants violated RESPA because 1) Defendant's agent never provided Plaintiff with standard good faith estimates clearly disclosing key loan terms and closing costs ; 2) Defendant's agent did not provide Plaintiff with a new HUD-1 settlement statement and 3) the payments to the mortgage broker and to the lender in regard to the principal balance and the interest adjustment were misleading and designed to create a windfall, in that Defendants were paid a "yield spread premium, e.i., a rebate. This was Defendants'

- 11 -

incentive for placing Plaintiff in a less attractive loan. These actions were self-serving, deceptive and fraudulent.

## COUNT III
### Rescission of Contract

48.     Plaintiff incorporates by this reference, each and every allegation contained in paragraphs 1 through 47 of this complaint as though fully set forth herein.

49.     Plaintiff only recently became aware of the existence of the grounds for rescission alleged above and alleges that defendant are subject to the obligations and responsibilities under the Federal TILA by failing to properly disclose all costs and loan fees associated with the refinance.  This non-disclosure was material and Plaintiff would not have agreed to the refinance loan had the true facts been fully disclosed.

50.     Plaintiff intends service of this complaint to serve as notice of rescission of the contract alleged in this cause of action.  Plaintiff hereby offers to restore to Defendant s all consideration that has passed from Defendants to plaintiff on the condition that Defendants restore to Plaintiff all interest paid on the loan and all costs and fees charged to obtain the loan including those fees and costs that were paid to third parties.

51.     As a legal and proximate result of the events described above, Plaintiff has suffered the following consequential damages in an amount to be determined.

## COUNT IV
### Predatory Lending

52.     Plaintiff incorporates by this reference, each and every allegation contained in paragraphs 1 through 51 of this complaint as though fully set forth herein.

- 12 -

53.     Defendants' conduct was unlawful in that each engaged in predatory lending practices in violation of the Federal TILA and California Financial Code § 4973.  By using sharp practices and abusive terms, Defendants' conduct was undertake in furtherance of their business activities and practices, which caused Plaintiff to obtain the loan with a significant likelihood that Plaintiff would go into default or foreclosure.  Defendants put Plaintiff into a loan with little or no regard to, among other things, her ability to repay the loan.  This practice is prohibited in such loan types under California Financial Code §4970 et seq.  Thus, Defendants effectively caused Plaintiff to default on the Promissory Note and Deed of Trust.  As a result, Defendants have created a situation wherein Plaintiff has been incapable complying with the terms of the Promissory Note.

54.     Plaintiff is informed and believes and thereon alleges that Defendants, by and through its agents, were aware that the above referenced actions would prevent Plaintiff from making the required payments on the loan and avoid a default and prevent the foreclosure sale.  These actions provided an avenue for  Defendants to potentially conduct a foreclosure sale and wrongly acquire a trustee's deed on the subject property.

55.  Should Defendants complete a foreclosure and obtain a trustee's deed on the subject property, said foreclosure sale will be improper and contrary to law.  In doing said acts, Defendants will have taken all steps necessary to remove Plaintiff from title to the subject property.

**COUNT V**
**Declaratory Relief**

56.     Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 55 of this Complaint as though fully set forth herein.

- 13 -

57.     Plaintiff desires a judicial determination and declaration of Plaintiff's and Defendants' respective rights and duties; specifically that Plaintiff did not breach the terms of the Promissory Note and Deed of Trust.  Such a judicial determination is appropriate at this time so that Plaintiff may determine her rights and duties and request that the sale be stayed and the subject property possession and title remain with Plaintiff.

## COUNT VI
### Injunctive Relief

58.     Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.     Defendant is actively sending Plaintiff multiple letters stating that they can set a sale date on or about July 20, 2010.  If the sale of her unique real property were to take place on this looming date, it would cause great and irreparable injury to the Plaintiff because Plaintiff would have no right to redeem the subject property after the sale and would thus forfeit her rights to her property.

60.     Plaintiff will likely succeed in this suit as Defendants' inability to disclose vital information about the loan and failure to timely provide necessary documents are clear violations of the law entitling her to damages and other equitable remedies.

## COUNT VII
### Unjust Enrichment

61.     Plaintiffs incorporates by this reference each and every allegation contained in paragraphs 1 through 60 of this Complaint as though fully set forth herein.

- 14 -

62.     Defendants provided Plaintiff with an agreement to repay a loan that had an adjustable interest rate and called for compensation to Defendants for the life of the loan, which Defendants valued.

63.     Plaintiff likewise expected in return, fair and truthful dealings, disclosures and practices by Defendants while providing value to Defendants.

64.      Defendants acknowledged, accepted, and benefited from Plaintiff's agreement to enter into the loan.

65.     A forced sale of the Plaintiff's home, and an allowance for Defendants to recoup the extreme profits enjoyed by forcing Plaintiff into an imbalance of principle to interest ratio would be inequitable and unconscionable. The Defendants would enjoy the benefit of the transaction and Plaintiff's payments without paying for their own breaches of the law and professional responsibilities.

## COUNT VIII
### Unfair Competition Under Bus. & Prof. Code §§ 17200, *et seq*.

66.     Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67.     Defendants' conduct described in Paragraphs 1 through 61 constitutes unlawful unfair and fraudulent business practices as defined by California Business and Professions Code § 17200.  As a result of Defendants' conduct, Plaintiff has suffered monetary harm in an amount to be proven at trial, and demand restitution in this amount pursuant to § 17200.

///

///

- 15 -

68.     Plaintiff is informed and believes that Defendants' unlawful, unfair, and fraudulent business practices described above present a continuing threat to members of the public as Defendants continue to engage in the unfair and unlawful acts described above.

69.     Injunctive relief is proper because Plaintiff is informed and believes that Defendants' unlawful, unfair and fraudulent business practices described above present a continuing threat to members of the public and that Defendants continue to engage in the unfair and unlawful acts described above.

70.     Injunctive relief is proper because Plaintiff has not adequate remedy at law. Monetary damages will not compel Defendants to cease to engage in the unfair business practices described in this action.

71.     Additionally, due to Defendants' unlawful, unfair and fraudulent business practices described above, Plaintiff has suffered and continues to suffer damages in a sum not yet ascertained, to be proven at trial.

## COUNT IX
### Fraud
### Violations of Cal. Civ. Code §§ 1709, 1571 et. seq.

72.     Plaintiffs incorporates by this reference each and every allegation contained in paragraphs 1 through 71 of this Complaint as though fully set forth herein.

73.     On or about October, 2006, Defendants and Defendants' agents made several intentional misrepresentations and/or material omissions to Plaintiff Lillie Mae Washington.

74.     Defendants and Defendants' agents made the preceding misrepresentations and omissions with the intent of deceiving Plaintiff about the true cost of the transaction for the purpose of inducing Lillie Mae Washington to sign the contract to refinance their home.

75.     Plaintiff justifiably relied on Defendants representations and omissions in agreeing to sign the contract to refinance their property.

76.     Defendants conduct in making the misrepresentations and omissions previously stated herein was willful, malicious and oppressive, and was done with the intention of depriving Plaintiff of her legal rights.

77.     As a result of Defendants' conduct, Plaintiff suffered actual and consequential damages in an amount to be proven at trial.  Plaintiff also demands exemplary damages in an amount to be proven at trial.

**COUNT X**
**Negligent Misrepresentation**

78.     Plaintiffs incorporates by this reference each and every allegation contained in paragraphs 1 through 77 of this Complaint as though fully set forth herein.

79.     On or about October, 2006, Defendants and Defendants' agents made several negligent misrepresentations and/or material omissions to Plaintiff.

80.     Defendants or Defendant's agents made the misrepresentation and omissions with the intent of inducing Plaintiff to sign the contract to refinance their home.

81.     Plaintiff justifiably relied on Defendants representations and omissions in agreeing to sign the contract to refinance their property.

82.     As a result of Defendants' conduct, Plaintiff has suffered actual and consequential damages in an amount to be proven at trial.  Plaintiff also demands exemplary damages in an amount to be proven at trial.

**COUNT XI**
**Violations of the Consumer Legal Remedies Act**
**Cal. Civil Code §§ 1770(5), (9), (16) & (19)**

- 17 -

83.    Plaintiffs incorporates by this reference each and every allegation contained in paragraphs 1 through 82 of this Complaint as though fully set forth herein.

84.    The Consumer Legal Remedies Act, Civil Code §§ 1750 et. seq., ("CLRA"), was designed to be liberally construed and applied in order to protect consumers from unfair and deceptive acts and practices that are prohibited in any transaction intended to result in the sale of goods or services to a consumer.

85.    Plaintiff is a "person," "consumer," and "senior citizen" within the meaning of Cal. Civil Code § 1761(c) and (d).

86.    Defendant HOME LOAN DIRECT is a "person" within the meaning of Cal. Civil Code §§ 1761(c).

87.    Plaintiff and HOME LOAN DIRECT entered into a "transaction" within the meaning of Cal. Civil Code §§ 1761(e).

88.    Defendants' conduct and representations described in paragraphs 1 through 82 constitutes violations of Cal. Civ. Code Sections:

- 1770(5) (representing that goods or services have characteristics or benefits which they do not have);

- (9) (advertising goods or services with intent not to sell them as advertised);

- (14) (representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve);

- (16) (representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not), and

- (19) (inserting an unconscionable provision in the contract)

- 18 -

89.     On October 26, 2007, more than 30 days prior to the commencement of this action, Plaintiff complied with Cal. Civ. Code § 1782 by notifying Defendants in writing of Defendants' particular violation of Section 1770 via a letter to HOME LOAN DIRECT.

90.     As a result of Defendants' above-described acts and omissions, Plaintiffs have suffered actual and consequential damages in an amount to be proven at trial.

91.     Moreover, pursuant to Cal. Civ. Code § 1780, Plaintiff also demands punitive damages and mandatory attorneys fees in an amount to be determined at trial.  In addition, Plaintiff, as a senior citizen, seeks an additional amount pursuant to Cal. Civil Code § 1780 (b)(1).

## COUNT XII
### Breach of Fiduciary Duties

92.     Plaintiffs incorporates by this reference each and every allegation contained in paragraphs 1 through 91 of this Complaint as though fully set forth herein.

93.     Defendants' agent acted as Plaintiffs mortgage broker.

94.     Defendants had fiduciary duties to investigate and discover material facts that may have affected Plaintiff's decision to refinance their home.

95.     Defendants also had fiduciary duties to counsel and advise Plaintiff regarding the ramifications of their decision to refinance their home and to consider the financing offered to them, and to disclose all reasonably obtainable material information to Plaintiff.

96.     Defendants breached these duties but making misrepresentations, failing to inform and advise Plaintiff of several key items of information about the loan, and by failing to provide Plaintiff with mandatory disclosures and loan documents.

- 19 -

97.     As a result of these and other acts, Defendants have breached their fiduciary duties to Plaintiff and have caused her to suffer damages in an amount to be proven at trial.

### COUNT XIII
### Financial Abuse of Elders
### Cal. Welfare & Institutions Code § 15610.30

98.     Plaintiffs incorporates by this reference each and every allegation contained in paragraphs 1 through 97 of this Complaint as though fully set forth herein.

99.     On or about October, 2006, Defendant cause Plaintiff who was 91 years old at the time, to refinance her property in Los Angeles, California.  Defendants failed to disclose material facts and made material misrepresentations as stated above to induce plaintiff to refinance her property.  Defendants charged Plaintiffs an origination fee of $14,120.00, to which Plaintiffs have a right.

100.    In addition to other remedies otherwise provided by law, Plaintiff seeks attorneys fees and costs under Cal. Welfare & Institutions Code § 15675.5.

### VI. PRAYER FOR RELIEF

WHERWFORE, Plaintiff pray for judgment as follows:

1.     Declare that Plaintiff is not liable for any finance or other charges in connection with the Deed of Trust and Promissory Note at issue in this case;

2.     Order that Defendants take all actions necessary to terminate the additional security interest in the subject property created under the 2006 loan, restoring the creditor's security interest to the amount secured prior to the loan pursuant to 15 U.S.C. 1635 §(b);

3.     Order that Defendants return to Plaintiff all money paid by Plaintiff to anyone, including Defendants, in connection with the 2006 loan pursuant to 15 U.S.C. 1635 §(b);

4.      Enjoin Defendant from engaging in the sale of mortgage loans in California until this Court is satisfied that Defendant has ceased to engage in fraudulent and misleading mortgage lending practices;

5.      Declare Defendant the mortgage foreclosure sale of Plaintiff's home, and the resulting unlawful detainer judgment void;

6.      Declare Plaintiff to be the sole owner of her home subject only to a lean the amount secured prior to October, 2006;

7.      Grant temporary injunctive relief, to be more specifically set forth in Plaintiff's forthcoming motion under F.R.C.P. 65, to prevent the irreparable harm and injury that will occur if Plaintiff's is forced to leave his home or the home is sold to a *boni fide* purchaser before the Court has the opportunity to void the illegal mortgage foreclosure sale conducted by MERS and restore Plaintiff's ownership interest;

8.      Award Plaintiff  $2,000 in statutory damages against Defendant and MERS, as appropriate, for their failure to honor Plaintiff's valid rescission in violation of TILA 15 U.S.C §1640(a)(2)(A)(iii);

9.      Award Plaintiff  $4,000 in statutory damages against Defendant and MERS, as appropriate, for their failure to acknowledge Plaintiff's qualified written requests pursuant to RESPA. 12 U.S.C §2605(f)(1)(B);

10.     Award Plaintiff appropriate relief under her claim for unjust enrichment;

11.     Award Plaintiff actual and consequential damages in an amount to be proven at trial;

- 21 -

12.   Award Plaintiff restitution for the amounts paid by Plaintiff as a result of the transaction;

13.   Award Plaintiff exemplary damages for Defendants' intentionally harmful and malicious conduct;

14.   Award Plaintiff costs and reasonable attorneys' fees. 15 U.S.C §640(a)(3); 12 U.S.C. §2605(f)(3); and

15.   Such other and further relief as the Court may deem just and proper.


ABDALLAH LAW GROUP

Dated:  May 24, 2010          /s/Mitchell L. Abdallah
                             Mitchell L. Abdallah, Attorney for Plaintiff
                             LILLIE MAE WASHINGTON

# *EXHIBIT A*

 **This page is part of your document - DO NOT DISCARD** 

# 06 2478012

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

## 11/08/06 AT 08:00AM

# TITLE(S) : 



L E A D    S H E E T

**FEE**

Code 01 - 73.00        Code T008 - 001                    D.T.T.
Code 18 - 04.00
Code 20 - 02.00

**CODE
20**

**CODE
19**

**CODE
9_____**     *Grand Total = $79.00*                    *Page Count = 23*

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**     **Number of AIN's Shown**

 **THIS FORM IS NOT TO BE DUPLICATED**

**EXHIBIT 1**                              **Page 1 of 26**

T.79

2

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME

MAILING
ADDRESS

CITY, STATE
ZIP CODE

CALIFORNIA HALL SERVICE
P.O. BOX 59623
NORWALK, CA 90650

06 2478012

23

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

TITLE(S)

Deed of Trust

**EXHIBIT 1**                    **Page 2 of 26**

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY

Recording Requested By:
CBSK FINANCIAL GROUP, INC., DBA
AMERICAN HOME LOANS



11/08/06

**20062478012**

And After Recording Return To:
CBSK FINANCIAL GROUP, INC., DBA
AMERICAN HOME LOANS
17991 COWAN
IRVINE, CALIFORNIA 92614
Loan Number: 9746839

_Lo0851759b_ _____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

MIN: 1001446-0010000270-0

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    OCTOBER 20, 2006    , together with all *Riders* to this document.

(B) "Borrower" is    HOBERT WASHINGTON, AN UNMARRIED MAN AND LILLIE MAE WASHINGTON,    A WIDOW AS JOINT TENANTS

Borrower is the trustor under this Security Instrument.

(C) "Lender" is    CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS

Lender is a    CALIFORNIA CORPORATION                                           organized
and existing under the laws of    CALIFORNIA

Lender's address is    17991 COWAN, IRVINE, CALIFORNIA 92614

(D) "Trustee" is    CHICAGO TITLE COMPANY
16969 VON KARMAN, IRVINE, CALIFORNIA 92614

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    OCTOBER 20, 2006    .
The Note states that Borrower owes Lender    THREE HUNDRED THIRTY-FIVE THOUSAND AND
00/100                                    Dollars (U.S. $  335,000.00    ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 1 of 14                    DocMagic *eFtorms* 800-649-1362
                                                                                  www.docmagic.com

Ca3005.mzd

**EXHIBIT 1**                                                **Page 3 of 26**

4

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2036

(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☒ Adjustable Rate Rider | | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | | ☐ Biweekly Payment Rider |
| ☒ 1-4 Family Rider | | ☐ Second Home Rider |
| ☐ Condominium Rider | | ☒ Other(s) [specify] |
| | | PREPAYMENT RIDER |

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 2 of 14                         DocMagic *eRorms* 800-649-1362
                                                                                        www.docmagic.com

Ca3005.mzd

EXHIBIT 1                              Page 4 of 26

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of LOS ANGELES :
[Type of Recording Jurisdiction]   [Name of Recording Jurisdiction]

LOT 111 OF TRACT 4796 IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 52, PAGE 28 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY
A.P.N.: 5063,007,082

which currently has the address of 2315, 2315 1/4 2315 1/2, HAUSER BOULEVARD
[Street]

LOS ANGELES , California 90016 ("Property Address"):
[City]   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 Page 3 of 14

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Ca3005.mzd

**EXHIBIT 1** **Page 5 of 26**

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 4 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.mzd

**EXHIBIT 1**                                    **Page 6 of 26**

7

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                      Page 5 of 14                        DocMagic *eFerms* 800-649-1362
                                                                                        www.docmagic.com

Ca3005.mzd

**EXHIBIT 1**                                   **Page 7 of 26**

8

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01          Page 6 of 14         DocMagic *eForms* 800-649-1362
www.docmagic.com

Cs3005.mzd

**EXHIBIT 1**          **Page 8 of 26**

9

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                   Page 7 of 14                     DocMagic *CFarms* 800-649-1362
www.docmagic.com

Ca3005.mzd

**EXHIBIT 1**                                                           **Page 9 of 26**

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.   Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                       Page 8 of 14                         DocMagic *eFarmns* 800-649-1362
                                                                                           www.docmagic.com

Ca3005.mzd

**EXHIBIT 1**                                          **Page 10 of 26**

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                                                Page 9 of 14

DocMagic *eFormas* 800-649-1362
www.docmagic.com

Ca3005.mzd

**EXHIBIT 1**                                                                **Page 11 of 26**

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**EXHIBIT 1**                                        **Page 12 of 26**

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01        Page 11 of 14      DocMagic *eForms* 800-649-1362
www.docmagic.com

Cx3005.mzd

**EXHIBIT 1**        **Page 13 of 26**

14

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                   Page 12 of 14
DocMagic *eFormss* 800-649-1362
www.docmagic.com

Ca3005.mzd

**EXHIBIT 1**                                   **Page 14 of 26**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
HOBERT WASHINGTON                           -Borrower

_____ (Seal)
LILLIE MAE WASHINGTON               -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

Witness:                                            Witness:

_____        _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 13 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.mzd

**EXHIBIT 1**                                    **Page 15 of 26**

State of California           )

                           ) ss.

County of  LOS ANGELES     )

On  Oct 24, 2006      before me,  Kimberly Decker, Notary Public

personally appeared  HOBERT WASHINGTON, LILLIE MAE WASHINGTON

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



KIMBERLY DECKER
Commission # 1611527
Notary Public - California
Los Angeles County
My Comm. Expires Oct 7, 2009

NOTARY SEAL

Kimberly Decker
_____
NOTARY SIGNATURE

_____
(Typed Name of Notary)

17

MIN: 1001446-0010000270-0                    Loan Number: 9746839

# ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS ADJUSTABLE RATE RIDER is made this 20th day of OCTOBER, 2006           ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure the Borrower's Adjustable Rate Note (the "Note") to    CBSK FINANCIAL GROUP,
INC., DBA AMERICAN HOME LOANS, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2315,2315 1/4 2315 1/2, HAUSER BOULEVARD, LOS ANGELES, CALIFORNIA 90016
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of       9.250 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
**(A) Change Dates**
The interest rate I will pay may change on the 1st   day of NOVEMBER, 2008           ,
and may change on that day every sixth month thereafter. Each date on which my interest rate could change
is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for
six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*.
The most recent Index figure available as of the first business day of the month immediately preceding the
month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon
comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index          *DocMagic eRemms* 800-649-1362
(Assumable During Life of Loan) (First Business Day Lookback)          www.docmagic.com
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120 3/04                    Page 1 of 3

Us5120.rid

**EXHIBIT 1**                    **Page 17 of 26**

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 125/1000 percentage point(s) ( 5.125 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.250 % or less than 9.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.250 %.
My interest rate will never be less than 9.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes** .

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120  3/04                                          Page 2 of 3

DocMagic *eforms* 800-649-1362
www.docmagic.com

**EXHIBIT 1**                                          **Page 18 of 26**

19

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Hobert Washington_ (Seal)
HOBERT WASHINGTON     -Borrower

_Lillie Mae Washington_ (Seal)
LILLIE MAE WASHINGTON -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

MULTISTATE ADJUSTABLE RATE RIDER - 6-Month LIBOR Index
(Assumable During Life of Loan) (First Business Day Lookback)
Single Family--Freddie Mac MODIFIED INSTRUMENT
Form 5120 3/04                     Page 3 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Us5120.rid

**EXHIBIT 1**                     **Page 19 of 26**

*20*

Loan Number: 9746839

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 20th day of OCTOBER, 2006
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to CBSK FINANCIAL GROUP, INC., DBA AMERICAN
HOME LOANS, A CALIFORNIA CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

2315, 2315 1/4 2315 1/2, HAUSER BOULEVARD, LOS ANGELES, CALIFORNIA 90016
[Property Address]

   1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

   **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT.** In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

   **B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change.  Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

   **C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

   **D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss
in addition to the other hazards for which insurance is required by Section 5.

---

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3170.rid

EXHIBIT 1                                Page 20 of 26

*2H*

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01      Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

**EXHIBIT 1**      **Page 21 of 26**

*22*

or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I.   CROSS-DEFAULT PROVISION.**  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)        _____ (Seal)
HOBERT WASHINGTON        -Borrower    LILLIE MAE WASHINGTON   -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                             -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower                             -Borrower

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                            Page 3 of 3

*DocMagic* *eForms* 800-649-1362
*www.docmagic.com*

1ix3170.rid

**EXHIBIT 1**                               **Page 22 of 26**

*23*

# PREPAYMENT RIDER

Loan Number: 9746839

Date: OCTOBER 20, 2006

Borrower(s): HOBERT WASHINGTON, LILLIE MAE WASHINGTON

THIS PREPAYMENT RIDER (the "Rider") is made this 20th    day of OCTOBER    ,
2006    , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS, A
CALIFORNIA CORPORATION
("Lender").  The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

2315,2315 1/4 2315 1/2, HAUSER BOULEVARD, LOS ANGELES, CALIFORNIA 90016
[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

### 5    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment."  When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so.  I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note.  However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment.  However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.

---

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                              Page 1 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com

Capr.ppf

**EXHIBIT 1**                    **Page 23 of 26**

24

If within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_Hobert Washington_ (Seal)                _Lillie Mae Washington_ (Seal)
HOBERT WASHINGTON         -Borrower       LILLIE MAE WASHINGTON  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                  -Borrower

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)                    Page 2 of 2
12/13/05

DocMagic eForms 800-649-1362
www.docmagic.com

EXHIBIT 1                                    Page 24 of 26

**This page is part of your document - DO NOT DISCARD**

06  2723957

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

8:01 AM DEC 07 2006

**TITLE(S) :** _____



L E A D     S H E E T

**FEE**

Code 01 - 14.00          Code S003 - 001
Code 20 - 04.00          Code R002 - 001

**D.T.T.**

**CODE**
**20**

**CODE**
**19**

**CODE**
**9**_____       Grand Total = $18.00          Page Count = 1

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.          **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

**EXHIBIT 1**                    **Page 25 of 26**

[REQUESTED BY]
Nationwide Title Clearing
[WHEN RECORDED MAIL TO]
HOBERT WASHINGTON
2315 HAUSER BLVD
LOS ANGELES, CA 90016
(TRUSTOR)

06  2723957

Loan: 7024143
SUBSTITUTION OF TRUSTEE and FULL RECONVEYANCE

Whereas
**HOBERT WASHINGTON, AN UNMARRIED MAN AND LILLIE MAE WASHINGTON, A WIDOW AS JOINT TENANTS** was the original Trustor under that certain Deed of Trust recorded on 06/16/2004 in the office of the County Recorder of LOS ANGELES County, California, as Instrument Number 04 1531469 in Book , Page

Whereas, the undersigned, *as the present Beneficiary(s) under said Deed of Trust desires to substitute a new Trustee under said Deed of Trust in place and stead of original Trustee, now therefore, the undersigned hereby substitutes himself (themselves) as Trustee under said Deed of Trust and does hereby reconvey without warranty to the persons legally entitled thereto all Estate now held by it under said Deed of Trust.*

Dated: 11/29/2006
FINANCIAL FREEDOM SENIOR FUNDING CORPORATION

By: _____
   CRYSTAL MOORE   VICE PRESIDENT

STATE OF FLORIDA  COUNTY OF PINELLAS
On  11/29/2006  before me, MARIA LEONOR GERHOLDT DD 0434521 , Notary Public, personally appeared CRYSTAL MOORE , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the same. WITNESS MY hand and official seal.                    **************

_____
MARIA LEONOR GERHOLDT DD 0434521
Notary Public/Commission expires 05/26/2009

```
MARIA LEONOR GERHOLDT
Notary Public State of Florida
My Commission Exp. May 26, 2009
No. DD 0434521
Bonded through (800) 432-4254
Florida Notary Assn., Inc
```

Prepared By: J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

|||||||||| ||||||||||  FFSRC 7366390   ARTA1172113

form1/RCNCA1

**EXHIBIT 1**                    **Page 26 of 26**

*Ocwen Loan Servicing, LLC*
*P.O. Box 24737*
*West Palm Beach, Florida 33416 - 4737*
O C W E N  *(Do not send correspondence or payments to the above address.)*          WWW.OCWEN.COM

04/30/10

Hobert Washington

2315 2315 1/4 2315 1/2 Hauser Boul
Los Angeles, CA 90016

Loan Number:           20242350
Property Address:      2315 2315 1/4 2315 1/2 Hauser Boulevard
                       Los Angeles, CA 90016

### PROPOSED MODIFICATION AGREEMENT

Dear Borrower(s):

Enclosed please find a proposed modification agreement (the "Agreement") on your loan referenced above for your review and consideration.

In order to accept this modification on your loan, you must complete ALL of the following steps **on or before** 5/28/10,  ("Due Date"):

1. **SIGN** the bottom of the Agreement on the line(s) for the Borrower(s):

2. **FAX** the fully executed Agreement to:          Attention: Home Retention Department
                                                     (407) 737-5693

3. PAY the full initial payment in the amount of:    $1,637.06
                                                     *[See Payment Instructions Attached]*

4. **NEW MONTHLY PAYMENT:**
   Principal and Interest Payment:                   $1,104.00
   Escrow Payment:                                   $533.06
   Total **(which may or may not include escrow):**  $1,637.06
                                                     **starting on 7/1/10.**

5. **SEND** proof of insurance coverage*             Attention: Escrow Department
   (Send proof of insurance ONLY to Escrow           Fax: (888) 882-1816
   Dept.  DO NOT include the Agreement.)              E-mail:updateinsuranceinfo@ocwen.com

*   Proof of insurance and the Agreement must be sent separately to the correct departments using the fax numbers provided above. Failure to send proof of insurance coverage before the Due Date will constitute acceptance of a force placed policy and agreement to pay the costs of such force placed policy, so long as all other items are complete.

Time is of the essence on this offer.  If ALL of the items above are not completed by the Due Date, the Agreement shall have no force or effect and any down payment received will be returned to you.   Please be advised that Ocwen Loan Servicing, LLC will not delay, postpone or otherwise stop any collection efforts until ALL of the steps above have been completed.

If you have any questions or require additional information, please contact the Home Retention Department directly at (877) 596-8580.

Sincerely,

Ocwen Loan Servicing, LLC

20242350                                                                                                    STUPEFM.10
*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

○ **Ocwen Loan Servicing, LLC**
   *P.O. Box 24737*
   *West Palm Beach, Florida 33416 - 4737*
O C W E N *(Do not send correspondence or payments to the above address.)*         WWW.OCWEN.COM

6.   Upon Modification, the new amount payable under your Note and the Mortgage will be increased to the total amount of debt owed on your loan.

7.   Upon Modification, the annual rate of interest charged on the unpaid principal balance of your loan will be 2.0000%. This rate will remain in effect until 08/01/13 and beginning with your first payment after the Trial Period expiration. At the end of this period your rate will be 2.55937% and will remain fixed until the maturity of your loan.

8.   If you sell your property, refinance, or otherwise payoff your loan during the 12 months following the date of Modification, the Modification will be voidable at the sole option of Ocwen and all amounts owed under the obligations existing prior to the Modification will be due and owing.

9.   You will comply with all other covenants, agreements, and requirements of your Mortgage, including without limitation, the covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that you are obligated to make under the Mortgage, except as otherwise provided herein.

10.   You understand and agree that:

   (a)   All the rights and remedies, stipulations, and conditions contained in your Mortgage relating to default in the making of payments under the Mortgage will also apply to default in the making of the modified payments hereunder.

   (b)   All covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified, and none of the your obligations or liabilities under your Note and Mortgage will be diminished or released by any provisions hereof, nor will this Agreement in any way impair, diminish, or affect any of Ocwen's rights under or remedies on your Note and Mortgage, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Ocwen is presently entitled against any property or any other persons in any way obligated for, or liable on, your Note and Mortgage are expressly reserved by Ocwen.

   (c)   Any expenses incurred in connection with the servicing of your loan, but not yet charged to your account as of the date of this Agreement, may be charged to your account after the date of this Agreement.

   (d)   Nothing in this Agreement will be understood or construed to be a satisfaction or release in whole or in part of your Note and Mortgage.

   (e)   In the event that a foreclosure is pending, the foreclosure action will not be dismissed. However, Ocwen will take reasonable action to place it on hold pending your completion of the Trial Period. If the Trial Period is successfully completed, any pending foreclosure action will be dismissed.

   (f)   During the Trial period, your loan will continue to be delinquent. As a result, late fees may be charged and credit reporting will continue pursuant to the original terms of your Note.

   (g)   You agree to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Ocwen, will bind and inure to your heirs, executors, administrators, and assigns.

   (h)   You understand that this agreement is legally binding and that it affects your rights. You confirm that you have had the opportunity to obtain, independent legal counsel concerning this Agreement and are signing this Agreement voluntarily and with full understanding of its contents and meaning.

   (i)   Corrections and Omissions: You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note.


Ocwen Loan Servicing, LLC _____           Hobert Washington _____


By: _____                    _____

20242350                                                                                                STUPEFM.10

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

Ocwen Loan Servicing, LLC
P.O. Box 24737
West Palm Beach, Florida 33416 - 4737
O C W E N  (Do not send correspondence or payments to the above address.)                WWW.OCWEN.COM

## PAYMENT REMITTANCE INFORMATION

1. Make checks payable to Ocwen Loan Servicing, LLC.
2. Always include your loan number with your payment.
3. The down payment must be in the form of certified funds.

**OVERNIGHT DELIVERY**
**(Money Order & Certified Checks Only)**
OCWEN LOAN SERVICING, LLC
ATTN: CASHIERING DEPARTMENT
1661 Worthington Road, Suite 100
West Palm Beach, Florida 33409

**MONEY GRAM**
**RECEIVER CODE:** 3237
**PAYABLE TO:** OCWEN LOAN SERVICING, LLC
**CITY:** ORLANDO
**STATE:** FLORIDA
**REFERENCE:** LOAN NUMBER 20242350
**AGENT LOCATER:** (800) 926-9400

**BANK WIRE**
**BANK:** JPMorgan Chase Bank, NA
**ABA:** 021000021
**ACCOUNT NAME:** Ocwen Loan Servicing, LLC
**ACCOUNT NUMBER:** 826078875
**REFERENCE:** Loan Number, Property Address,
and Borrower Name

**BY WUOC**
**Code City:** Ocwen
**State:** FL
**Reference:** Loan #
**Attn:** Home Retention Department

Email: Transferfunds@ocwen.com with the details of the wire.

## LOAN MODIFICATION AGREEMENT

Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement"), dated 04/30/10, which modifies the terms of your home loan obligations as described in detail below:

A.    the Mortgage, Deed of Trust, or Security Deed (the "Mortgage"), dated and recorded in the public records of Los Angeles County, and

B.    the Note, of the same date and secured by the Mortgage, which covers the real and personal property described in the Mortgage and defined therein as the "Property", located at 2315 2315 1/4 2315 1/2 Hauser Boulevard Los Angeles, CA 90016.

Pursuant to our mutual agreement to modify your Note and Mortgage and in consideration of the promises, conditions, and terms set forth below, the parties agree as follows:

1.    In order for the terms of this modification to become effective, you promise to make an initial payment of $1,637.06 on or before 5/28/10 and two (2) equal monthly payments of principal and interest in the amount of $1,104.00 to Ocwen ("Trial Period") beginning on 7/1/10, and thereafter due on the same day of each succeeding month.

2.    You agree that, at the end of the Trial Period, the new principal balance due under your modified Note and the Mortgage will be $270,382.45. Upon modification, your Note will become current and will not be in default.

3.    Any payments due for taxes or insurance will be your responsibility in addition to the payments of principal and interest required under the terms of this modification. If this loan is currently escrowed, Ocwen will continue to collect the required escrow amounts with your monthly principal and interest payment.

4.    If you successfully complete the Trial Period, your loan will automatically be modified pursuant to the terms of this Agreement (the "Modification"). However, if you fail to send any full payment on or before the respective due date during the Trial Period, the Trial Period will immediately terminate and the Modification offer will be null and void. Acceptance and application of late payments during the Trial Period does not waive Ocwen's right to terminate the Trial Period, nullify the Modification, or resume foreclosure or other activities related to the delinquency of the loan under its original terms.

5.    After the Trial Period expiration, you promise to make payments of principal and interest on the same day of each succeeding month until all amounts owed under the Note and Modification are paid in full.

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*



Western Progressive, LLC
PO Box 9045
Temecula, CA 92589-9045

2234576500

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

*Send Correspondence to:*
Western Progressive, LLC
PO Box 740656
Atlanta, GA 30374

LILLIE MAE WASHINGTON

2315 1/4 & 2315 1/2 HAUSER B
LOS ANGELES, CA  90016

20100513-68
CA30DAY_FirstClass



*1096-v4*

RECORDING REQUESTED BY:

|  | THIS IS TO CERTIFY THAT THIS IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL RECORDED IN THE OFFICE OF THE COUNTY |
|---|---|

WHEN RECORDED MAIL TO:

| RECORDING FEE: | **$24.00** |
|---|---|
| RECORDED ON: | **April 15, 2010** |
| AS DOCUMENT NO: | **10-0512810** |
| BY: | **s/ Marco Marquez** |

**Western Progressive, LLC**
P.O. Box 740656
Atlanta, GA 30374

LSI TITLE COMPANY (CA)

---

Loan No.: 20242350                                                 TS No.: 2009-01357

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is __$23,350.04__ as of __4/14/2010__, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

Ocwen Loan Servicing, LLC HSBC Bank USA, N.A., as Trustee on behalf of ACE Securities Corp. Home Equity Loan Trust and for the registered holders of ACE Securities Corp. Home Equity Loan Trust, Series 2007-ASAP1, Asset Backed Pass-Through Certificates, Ocwen Loan Servicing, LLC its attorney in fact.
C/O Western Progressive, LLC
P.O. Box 740656
Atlanta, GA 30374
Beneficiary Phone: 877-596-8580



Loan No.: **20242350**                          TS No. **2009-01357**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

NOTICE IS HEREBY GIVEN:  That **Western Progressive, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **10/20/2006,** executed by **HOBERT WASHINGTON, AN UNMARRIED MAN AND LILLIE MAE WASHINGTON, A WIDOW AS JOINT TENANTS,** as Trustor, to secure certain obligations in favor of **CBSK FINANCIAL GROUP, INC., DBA AMERICAN HOME LOANS A CALIFORNIA CORPORATION, AS LENDER, Mortgage Electronic Registration Systems, Inc.,** as beneficiary, recorded **11/8/2006,** as Instrument No. 06 2478012, in Book ---, Page ---,  and rerecorded on --- as --- of Official Records in the Office of the Recorder of  Los Angeles County, **California** describing land therein as: **As more particularly described on said Deed of Trust.**

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of $335,000.00.  A breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

 **Installment of Principal and Interest plus impounds and/or advances which became due on 9/1/2009 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**
**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**
**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**
**Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING.  YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS.   THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF.  SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID.  IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

**The mortgagee, beneficiary, or authorized agent has fulfilled its obligation under California Civil Code Section 2923.5(a) by contacting the borrower either in person or by telephone to assess the borrower's financial situation and explore options to avoid foreclosure prior to 30 days of filing the**

Notice of Default.   The borrower was advised of their right to a subsequent meeting within 14 days of the initial contact.  In addition, the borrower was provided with the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.

Dated: 4/14/2010

Western Progressive, LLC, as agent for beneficiary

LSI TITLE COMPANY, AS AGENT

Marco Marquez

