MITCHELL L. ABDALLAH,  #231804

ABDALLAH LAW GROUP
1006 4TH STREET, 4TH FLOOR
SACRAMENTO, CA  95814
TEL:/ (916) 446-1974
FAX:/ (916) 446-3371
MITCH@ABDALLAHLAW.NET

Attorney for Plaintiff, Lillie Mae Washington

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| Lillie Mae Washington,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN HOME LOANS DIRECT, Inc., a Delaware Corporation dba DE HDL, Inc., its successors and assignees, OCWEN LOAN SERVICING, LLC, a Delaware Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEM, Inc., Hisham Desouki, Christopher Cox, Jonathan Annett, LODES CAPITAL ESCROW Inc., Nikki Hall, FOX FIELDS FINANCIAL, Inc. , Christopher Fox, WESTERN PROGRESSIVE, LLC and DOES 1-10 inclusive,<br><br>Defendants. | Case No.: 2:09-8213 SJO (RZx)<br> Honorable: S. James Otero<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT OCWEN LOAN SERVICING AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 12 (b)(6)]<br><br>Hearing:   July 26, 2010<br>Time:       10:00 P.M.<br>Dept.:        1 |

Plaintiff LILLIE MAE WASHINGTON (hereinafter "Plaintiff") hereby submits this Memorandum of Points and Authorities in Opposition to Defendant OCWEN LOAN SERVICING, LLC (hereinafter "OCWEN") and MORTGAGE ELECTRONIC REGISTRATION SYSTEM, Inc. (hereinafter "MERS"), collectively referred to hereinafter as ("Defendants") Motion to Dismiss Plaintiff's First Amended Complaint.

- 1 -

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................5

II     SUMMARY OF CASE........................................................................5

III.    STATEMENT OF FACTS...................................................................6

IV.    ARGUMENT......................................................................................10

V.     CONCLUSION………………………………………………...…18

**A. PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY SATISFIES FEDERAL RULE OF CIVIL PROCEDURE 8 (A)………………………..11**

**B. PLAINTIFF'S TILA CLAIM IS NOT TIME BARRED AND THE CLAIM HAS MORE THAN SUFFICIENT EVIDENCE TO SUPPORT THE LLEGATIONS AGAINST OCWEN AND MERS………………………….12**

**C. AS AN ASSIGNEE AND THIRD PARTY BENEFICIARY OF THE MORTGAGE, DEFENDANTS ARE ACCOUNTABLE FOR THE PREDATORY LENDING AND UNFAIR COMPETITION ACTS COMMITTED BY THE LOAN ORIGINATOR..……………………………………………………..14**

**D. THE RESPA CLAIM IS ALSO TIMELY DUE TO PLAINTIFF'S RECENT DISCOVERY OF THE CLAIM WHICH TOLLS THE STATUTE OF LIMITATIONS…………………………………………………….....15**

**E. PLAINTIFF'S RESCISSION OF CONTRACT AND UNDERLYING TILA CLAIM DOES NOT FAIL BECAUSE DEFENDANTS ARE AN ASSIGNEE AND A THIRD PARTY BENEFICIARY OF THE MORTGAGE…………………15**

**F. PLAINTIFF'S PREDATORY LENDING CLAIM DOES NOT FAIL BECAUSE APPROPRIATE ALLEGATIONS WERE MADE IN PLAINTIFF'S FIRST AMENDED COMPLAINT……………………………………………15**

**G. PLAINTIFF IS ENTITLED TO A JUDICIAL DETERMINATION OF PLAINTIFF AND DEFENDANTS' RIGHTS…………………………..16**

**H. PLAINTIFF'S SHOULD BE GRANTED INJUNCTIVE RELIEF…………...16**

**I. PLAINTIFF'S HAS A VALID CLAIM OF UNJUST ENRICHMENT…………16**

**J. PLAINTIFF'S HAS A VALID UNFAIR COMPETITION CLAIM UNDER BUSINESS AND PROFESSIONS CODE §§ 17200…………………………17**

**K. PLAINTIFF'S FRAUD CLAIM WAS ALLEGED WITH SUFFICIENT PARTICUALARITY……………………………………………...17**

**L. PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM IS ALLEGED WITH SUFFICIENT PARTICULARITY………………………………17**

**M. THE APPLICABILITY OF CLRA IS NOT AN APPROPRIATE ISSUE TO RAISE IN A MOTION TO DISMISS……………………………………...18**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**N. WHETHER DEFENDANT MERS AND OCWEN ARE LIABLE AS FIDUCIARIES IS AN NOT AN APPROPRIATE ISSUE TO RAISE IN A MOTION TO DISMISS**………………………………………………………..18

**O. PLAINTIFF'S ELDER ABUSE IS A VALID CLAIM** ……………………………...18

**V.      CONCLUSION**.......................................................................18

*Plaintiff's Memorandum of Points and Authorities in Opposition to Motion to Dismiss First Amended Complaint.*
*Lillie Mae Washington v. Ocwen Loan Servicing et al.*

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*
   129 S.Ct. 1937, 1949 (2009)…………………………………………….. 11

*Barron v. Reich*
   13 F.3d 1370 (9th Cir. 1994)....................................................................11

*Balistreri v. Pacifica Police Dep't*
   901 F.2d 696 (9th Cir. 1988)...................................................................10

*Garbor v. County of Santa Clara Bd. of Supervisors*
   2008 U.S. Dist. LEXIS 32115................................................................10

*Gilligan v. Jamco Dev. Corp.*
   108 F.3d 246 (9th Cir. 1997)..................................................................10

*Kelly v. Mortgage Elec. Registration Sys.*,
   642 F.Supp.2d 1048 (ND Cal. 2009)......................................................15

*King v. California*
   784 F.2d 910 (9th Cir. 1986)..................................................................13

*Levine v. Diamanthuset, Inc.*
   950 F.2d 1478 (9th Cir. 1994)................................................................10

*Retail Clerks Int'l Ass'n v. Schermerhorn*
   373 U.S. 746 (1963).................................................................................11

*Thomas v. U.S. Bank National Association ND*
   575 F.3d 794 (8th Cir. 2009)..................................................................15

**STATUES AND RULES**

Fed. Rule Civ. Proc. R 12(d)....................................................................11

Fed. Rule Civ. Proc. R 8(c).....................................................................12

*Plaintiff's Memorandum of Points and Authorities in Opposition to Motion to Dismiss First Amended Complaint.*
*Lillie Mae Washington v. Ocwen Loan Servicing et al.*

## I.      INTRODUCTION

This action arises as a result of predatory and abusive mortgage lending practices that led to the threatened foreclosure of the home of LILLIE MAE WASHINGTON (herein "Plaintiff").   Plaintiff was fraudulently induced to refinance to an adjustable rate mortgage that she did not knowingly agree to accept.   Now, Plaintiff is faced with an interest rate that has adjusted upward causing a significantly larger monthly premium than the one she agreed to pay.

This action is filed under TILA and related laws to enforce Plaintiff's right to rescind her mortgage loan, to cease the default process initiated on Plaintiff's home, and to recover actual and statutory damages and reasonable attorney's fees and costs.

## II.     SUMMARY OF CASE

On November 2009, Plaintiff filed her complaint alleging six causes of action against Defendants and six others.  On May 24, 2010, Plaintiff filed her First Amended Complaint against Defendants and six other parties for their part in violating the Truth in Lending Act (TILA); the Real Estate Settlement Procedures Act (RESPA); Unfair Competition under California Business and Professions Code § 17200; Fraud; Rescission of Contract, Predatory Lending, Injunctive Relief; Declaratory relief; negligent Misrepresentation; Violation of Consumer Lending Remedies Act; Breach of Fiduciary Duties; Financial Abuse of Elders; and Unjust Enrichment.

On June 17, 2010, Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint.  Finally, on July 7, 2010 Plaintiff filed this Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss.

### III.   STATEMENT OF THE FACTS

Plaintiff is a 94 year old woman that has been living in her home for about 36 years. She owns property located at 2315, 2315 1/4 and 2315 1/2 Houser Boulevard, Los Angeles, California.

On or about October, 2006, an agent of AMERICAN HOME LOAN communicated with Hobert Washington, Plaintiff's recently deceased son.  Without the knowledge of Plaintiff, the agent persuaded Hobert Washington to obtain a loan from AMERICAN HOME LOAN.  On information and belief, Hisham Desouki had a face-to-face meeting with Hobert Washington to complete his residential loan application.  Prior to his death, Hobert Washington was suffering from Alzheimer's disease and his cognitive impairment would have been immediately visible and obvious to anyone who spoke and interacted with him. Despite this, AMERICAN HOME LOAN and its agent had Hobert Washington sign loan documents without having any immediate family members present to help him.

On or about October, 2006, AMERICAN HOME LOAN agent Jonathan Annett came to Plaintiff's home with loan documents already prepared.  At the meeting with Mr. Annett was Plaintiff, Plaintiff's daughter, Saundra Warren, and Plaintiff's son, Bobby Washington. Hobert Washington was not present at the meeting.  This is the only meeting Mr. Annett had with Plaintiff.  There were no discussions between Mr. Annett and Plaintiff either before or after the October, 2006 meeting.

At the meeting, Mr. Annette stressed to Plaintiff that she "needed to get out of" their existing mortgage.   He represented to Plaintiff that she would receive $80,000 in cash, that the payments would not commence until June, 2007, and that the monthly mortgage payment

- 6 -

would be between $600 to $700 per month.  He also stated that the interest rate would be about 6 percent and that the loan would be for a fixed rate.

Plaintiff relied upon these representations made by Mr. Annett and thus signed the loan documents at the meeting in October, 2006.  There was no notary present when she signed the documents and Plaintiff did not sign a notary log.

Mr. Annett failed to clearly and conspicuously disclose the key provision of Plaintiff's mortgage, including but not limited to such details as the interest rate, which adjusted in a very complicated manner, specific loan terms, and the total dollar amount the mortgage would cost over time.

Defendant's loan was structurally unfair and was designed to be difficult for Plaintiff to understand due to its multiple layers of risk and Defendant took no meaningful consideration as to whether Plaintiff could afford to pay the loans.

Furthermore, Mr. Annett did not leave any documents or provide Plaintiff with any copies of documents even though the Washingtons specifically asked for copies.  Additionally, Mr. Annett did not provide Plaintiff with the Truth in Lending Act ("TILA") or the Housing and Urban Development ("HUD") settlement statement as required by law.  Although Mr. Annett stated he would send the loan documents via overnight mail, he never did.  Because Mr. Annett did not provide Plaintiff with the TILA and HUD disclosures, Plaintiff did not have any meaningful opportunity to exercise her right to cancel the loan as provided for under 15 U.S.C. § 1641(c).

AMERICAN HOME LOAN continued to delay giving the Washingtons copies of the loan documents.  Shortly after the October, 2006 meeting with Plaintiff, Bobby Washington

called AMERICAN HOME LOAN and asked for copies of the documents.  The documents were again not sent.  Later, Bobby Washington called again and spoke with Jonathan Spannagel of AMERICAN HOME LOAN and asked him to provide copies of the documents.

After several requests to produce all documents, AMERICAN HOME LOAN provided Plaintiff with the following two documents.

(1) an undated and unsigned document stating "The loan was just finished for you is just a credit repair loan.  We supplied enough payment for 6 months.  We have paid off all the debt in full so that the credit score will rise.  After the 6 months we will be able to recast the loan to a more comfortable payment."

(2) a handwritten note stating that "I ordered the whole packet from escrow.  It will be here next week then I will send it to you.  Sorry for the Inconvenience [sic] and the misunderstanding.  Everything will be alright."

On or about November 25, 2006, Plaintiff finally received copies of the loan agreement.  The Washingtons were shocked to learn that the loan payments began in December, 2006 instead of June, 2007 as promised by Mr. Annett.  Plaintiff also received a cash payment of $95,909.25 which was much more than the $80,000 discussed in the meeting with Mr. Annett.  The Washington's were also shocked to learn that the monthly payment on the adjustable rate loan was $2,582.29, which was approximately three times the amount that Mr. Annett informed Plaintiff that she would be required to pay.  Furthermore, they learned the payments were projected to increase to $2,931.25 on December 1, 2008 and to $3,163.01 on December 1, 2011.  The last payment was projected to be $3,161.01.

Because the monthly payments were outside of Plaintiff's budgeted amount, she was forced to use the cash out payment to make the monthly payments on the loan.

On or about September 16, 2008, Plaintiff and her now deceased son, Hobert Washington filed a state court claim against AMERICAN HOME LOANS DIRECT for Fraud, Negligent Misrepresentation, Breach of Fiduciary Duties, Financial Abuse of Elders, Undue Influence, and Violations of the Consumer Legal Remedies Act, and California Business & Professions Code § 17200.

On or about September, 2009, Plaintiff's daughter, Saundra Warren, contacted a representative of Defendant OCWEN LOAN SERVICING LLC to discuss a loan modification with them on behalf of her mother.  Ms. Warren completed and sent a loan modification application to Defendant OCWEN LOAN SERVICING LLC but neither she nor Plaintiff ever heard back from them about the application.

On or about October, 2009, Plaintiff could not continue to pay the overwhelmingly large payments each month and was forced to make her last monthly payment to date on the mortgage.  Plaintiff's inability to pay the monthly loan payment is a direct result of Mr. Annett's misrepresentations about the loan and his failure to provide the required disclosures and copies of the loan documents in a timely fashion.

On or about November 13, 2009, Plaintiff filed a complaint In Pro Se in the United States District Court for the Central District of California asserting all of the same causes of actions appearing in this complaint along with a few other causes of action not alleged herein.

On or about April 15, 2010, Defendant WESTERN PROGRESSIVE, LLC began sending Plaintiff Notices of Default.  This practice continues to be conducted in an aggressive and harassing manner as Defendant WESTERN PROGRESSIVE, LLC sends ten copies of the same notices at a time.  The Notices of Default state that they may set the date for the sale of Plaintiff's property to occur three months from the April 15, 2010, recordation date appearing on the form.

Plaintiff remains in the subject property pending the litigation of these claims.  Plaintiff holds Defendant AMERICAN HOME LOAN DIRECT and OCWEN LOAN SEVICING, LLC as successors and their agents liable for violations of State and Federal law.

## IV.    ARGUMENT

Federal Rule of Civil Procedure Rule 12(b)(6) states that a party may assert a defense by motion to show that the complaint fails to state a claim upon which relief can be granted.  Such a motion tests the legal sufficiency of the claims asserted in the complaint.  *Garbor v. County of Santa Clara Bd. of Supervisors*, 2008 U.S. Dist. LEXIS 32115 p.8.  A court can dismiss a claim based on the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The court should consider not whether the non-moving party will ultimately prevail in the matter but whether it is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  The court's review is limited to the face of the complaint, documents referenced in the complaint, and documents of which the court takes judicial notice.  *Levine v. Diamanthuset, Inc.*, 950

F.2d 1478, 1483 (9th Cir. 1991).  The evaluating court must accept all material allegations in the complaint as true and must construe them in the light most favorable to the nonmoving party.  *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the allegation of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6. (1963). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and accepted by the court, the motion must be treated as a summary judgment and all parties must be given a reasonable opportunity to present all material that is pertinent to the motion.   Fed. Rules  of Civ. Proc. R 12(d).  With these general principals in mind, the court is urged to consider the following arguments as to why Defendant's 12(b)(6) motion should be denied.

### A. PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY SATISFIES FEDERAL RULE OF CIVIL PROCEDURE 8 (A).

Plaintiff clearly and concisely states her allegations against all the named Defendants in the First Amended Complaint satisfying Rule 8 (a). Furthermore, a party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.  Fed. Rule of Civ. Proc. 8 (c).  Again, Plaintiff meets and exceeds this requirement by detailing her claims and allegations against all defendants and their successors.

- 11 -

**B. PLAINTIFF'S TILA CLAIM IS NOT TIME BARRED AND THE CLAIM HAS MORE THAN SUFFICIENT EVIDENCE TO SUPPORT THE LLEGATIONS AGAINST OCWEN AND MERS.**

Plaintiff only recently discovered Defendants' failures to disclose important information about the terms of the loan and Defendants' failure to provide her with clear information and materials about the loan.  Because Defendants and their agents did not reveal this information to Plaintiff at the time she entered into the loan agreement with them, equitable tolling applies here.

Plaintiff relied upon representations made by Mr. Annett and thus signed the loan documents at the meeting in October, 2006.  There was no notary present when she signed the documents and Plaintiff did not sign a notary log.

Mr. Annett failed to clearly and conspicuously disclose the key provision of Plaintiff's mortgage, including but not limited to such details as the interest rate, which adjusted in a very complicated manner, specific loan terms, and the total dollar amount the mortgage would cost over time.

Defendant's loan was structurally unfair and was designed to be difficult for Plaintiff to understand due to its multiple layers of risk and Defendant took no meaningful consideration as to whether Plaintiff could afford to pay the loans.

Furthermore, Mr. Annett did not leave any documents or provide Plaintiff with any copies of documents even though the Washingtons specifically asked for copies. Additionally, Mr. Annett did not provide Plaintiff with the Truth in Lending Act ("TILA") or the Housing and Urban Development ("HUD") settlement statement as required by law. Although Mr. Annett stated he would send the loan documents via overnight mail, he never

- 12 -

did.  Because Mr. Annett did not provide Plaintiff with the TILA and HUD disclosures, Plaintiff did not have any meaningful opportunity to exercise her right to cancel the loan as provided for under 15 U.S.C. § 1641(c).

AMERICAN HOME LOAN continued to delay giving the Washington's copies of the loan documents.  Shortly after the October, 2006 meeting with Plaintiff, Bobby Washington called AMERICAN HOME LOAN and asked for copies of the documents.  The documents were again not sent.  Later, Bobby Washington called again and spoke with Jonathan Spannagel of AMERICAN HOME LOAN and asked him to provide copies of the documents.

After several requests to produce all documents, AMERICAN HOME LOAN provided Plaintiff with the following two documents.

(1) an undated and unsigned document stated "The loan was just finished for you is just a credit repair loan.  We supplied enough payment for 6 months.  We have paid off all the debt in full so that the credit score will rise.  After the 6 months we will be able to recast the loan to a more comfortable payment."

(2) a handwritten note stating that "I ordered the whole packet from escrow.  It will be here next week then I will send it to you.  Sorry for the Inconvenience and the misunderstanding.  Everything will be alright."  On or about November 25, 2006, Plaintiff finally received copies of the loan agreement.

In *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986) the Ninth Circuit held that the doctrine of equitable tolling may suspend the limitations period until the borrower discovers the fraud or nondisclosure that form the basis of the TILA action.  In remanding the case, the

- 13 -

court also held that the determination as to whether equitable tolling applies is a question of fact for the district court to decide. *Id.*

Contrary to Defendant's claim, Plaintiff has pled facts in the complaint establishing that equitable tolling is appropriate. First, Plaintiff pled that Defendants failed to "clearly and conspicuously disclose the key provisions of the mortgage." Plaintiff further pled that Defendants failed to explain and /or disclose in a meaningful manner the terms and conditions of their loan products and instead provided borrowers like Plaintiff with incomplete or confusing information related to product features, material loan terms, product risks, and the borrowers' obligations for property taxes and insurance. This language illustrates that Plaintiff did not have the information required which would have put her on notice of the TILA violation. Additionally, the complaint specifically states that all statutes of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et seq., were tolled due to the hidden nature of this violation, which did not reveal itself until within the past year Finally, the complaint asserts several claims for monetary damages in the prayer for relief.

These passages present, at the very least, genuine issue of disputed facts that provide this court with ample justification to deny Defendant's motion to dismiss.

**C. AS AN ASSIGNEE AND THIRD PARTY BENEFICIARY OF THE MORTGAGE, DEFENDANTS ARE ACCOUNTABLE   FOR THE PREDATORY LENDING AND UNFAIR COMPETITION  ACTS COMMITTED BY THE LOAN ORIGINATOR.**

An assignment of the Deed of Trust of the subject loan was passed from defendant AMERICAN HOME LOAN to defendant OCWEN and was registered by defendant MERS.  MERS acted in

- 14 -

1   concert with OCWEN to complete the loan assignment to OCWEN.  It would be unfair for any
2   claims attached to the note to die with that assignment.

3       In *Thomas v. U.S. Bank National Association ND*, 575 F.3d 794 (8th Cir. 2009), the Eight
4   Circuit recently prevented Defendant UBNA from wrongfully cleansing itself of tainted loans as
5   Defendants are attempting to do in this case.  The *Thomas* court held:

6
7           "Any person who purchases or is otherwise assigned a [tainted] mortgage
            shall be subject to all claims and defenses with respect to that mortgage that
8           the consumer could assert against the [original lender].  To hold otherwise
            would allow an originating bank to cleanse an otherwise illegal loan merely
9           by assigning it to a national bank."  See 15 U.S.C. § 1641(d).

10      This court should apply this rule here to stop Defendants from attempting to wipe this tainted
11   California loan clean by obtaining it as assignee.

12
13   **D.  THE RESPA CLAIM IS ALSO TIMELY DUE TO PLAINTIFF'S RECENT
         DISCOVERY OF THE CLAIM WHICH TOLLS THE STATUTE OF
14       LIMITATIONS.**

15      By alleging facts that show the statute of limitations should be tolled, a plaintiff is entitled to
16   equitable tolling.  *Kelly v. Mortgage Elec. Registration Sys.*, 642 F.Supp.2d 1048, 1058 (ND Cal.
17   2009).  Similar to the argument above regarding the TILA claim, Plaintiff only recently discovered
18   Defendants' failures to disclose the self-serving, deceptive, and fraudulent aspects of the loan.
19   Furthermore, Plaintiff incorporated by reference all the facts establishing equitable tolling to the
20   RESPA count.  Therefore, because she discovered this information recently, equitable tolling also
21   applies here.
22
23
24
25
26
27
28

- 15 -

### E.  PLAINTIFF'S RESCISSION OF CONTRACT AND UNDERLYING TILA CLAIM DOES NOT FAIL BECAUSE DEFENDANTS ARE AN ASSIGNEE AND A THIRD PARTY BENEFICIARY OF THE MORTGAGE.

Defendants are liable to the Plaintiff under the original contract because OCWEN is an assignee of the loan and MERS is a third-party beneficiary; both defendants are liable under the original contract. See explanation in *Section C*.

### F.  PLAINTIFF'S PREDATORY LENDING CLAIM DOES NOT FAIL BECAUSE APPROPRIATE ALLEGATIONS WERE MADE IN PLAINTIFF'S FIRST AMENDED COMPLAINT.

Plaintiff's loan was a covered loan and Plaintiff incorporated the entire loan agreement into its First Amended Complaint, and the loan agreement was attached as Exhibit A to the First Amended Complaint.  See Page 7-8 of the First Amended Complaint whereby Plaintiff incorporated the loan agreement into the First Amended Complaint.

Defendants are liable for predatory lending claims as an assignee of the loan and a third-party beneficiary. See explanation in *Section C*.

### G.  PLAINTIFF IS ENTITLED TO A JUDICIAL DETERMINATION OF PLAINTIFF AND DEFENDANTS' RIGHTS

Plaintiff seeks a judicial declaration and determination of her and defendant's respective rights and duties.  Plaintiff's statements in its First Amended Complaint do not render her ineligible to seek a court's determination of the issues in this matter.

### H.  PLAINTIFF'S SHOULD BE GRANTED INJUNCTIVE RELIEF

Injunctive relief is based upon a likelihood of success on the merits of the case.  Based on the First Amended Complaint and reasons explained throughout this responsive motion, the Plaintiff has a likelihood of success on the merits of her case and should be granted injunctive relief.

### I.  PLAINTIFF'S HAS A VALID CLAIM OF UNJUST ENRICHMENT

Ocwen is an assignee of the original loan and it undoubtedly benefitted from the fraudulent assignment if the original loan to it.   MERS also benefitted from the fraudulent loan assignment to

Ocwen because it was custodian responsible for transferring the loan to Ocwen and MERS' business was furthered by this fraudulent loan assignment.

### J.  PLAINTIFF'S HAS A VALID UNFAIR COMPETITION CLAIM UNDER BUSINESS AND PROFESSIONS CODE §§ 17200

It would be unjust to permit defendants to escape liability because there are the assignee and third party beneficiary of a fraudulent and coercive loan assignment. The defendants should have taken adequate measures to prevent coercive conduct, as alleged in the First Amended complaint, which included misrepresenting the terms of the loan agreement to the Plaintiff and continuous failure and refusal to provide loan documents to the Plaintiff.  Plaintiff believes that Defendants' wrongful conduct is ongoing and presents a continuing threat to members of the public and that Defendants continue to engage in the unfair and unlawful acts described above.

### K.  PLAINTIFF'S FRAUD CLAIM WAS ALLEGED WITH SUFFICIENT PARTICUALARITY

The First Amended Complaint filed by the Plaintiff includes the who, what, when, where and how of the fraud in sufficient particularity in the facts section. Two AMERICAN HOME LOAN agents, Jonathan Annett and Hisham Desouki communicated with the Plaintiff and made specific misrepresentations regarding the terms of the loan which they persuaded and/or coerced the Plaintiff to enter into.

### L.  PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM IS ALLEGED WITH SUFFICIENT PARTICULARITY

The defendant or its agents made misrepresentations to the plaintiff regarding the terms of the loan. The fact that these misrepresentations were made without reasonable grounds for believing them to be true is evident from the defendants and their agents' conduct when they repeatedly refused to provide a copy of the terms of the loan agreement.  This satisfies the requirements for negligent misrepresentation claim.

## M. THE APPLICABILITY OF CLRA IS NOT AN APPROPRIATE ISSUE TO RAISE IN A MOTION TO DISMISS

Plaintiff alleges that the Defendants have violated the following provisions of the Consumer Legal Remedies Act, Cal. Civil Code §§ 1770(5), (9), (16) & (19).  Whether or not the allegations stand in court is an issue of fact, and it is improper to raise in a motion to dismiss.

## N. WHETHER DEFENDANT MERS AND OCWEN ARE LIABLE AS FIDUCIARIES IS AN NOT AN APPROPRIATE ISSUE TO RAISE IN A MOTION TO DISMISS

Defendants are liable to Plaintiff as they owed fiduciary duties to the Plaintiff.  This issue is a matter of fact and cannot rightly be ruled upon in a Motion to Dismiss.

## O.  PLAINTIFF'S ELDER ABUSE IS A VALID CLAIM

The defendant or its agents made misrepresentations to the plaintiff regarding the terms of the loan.  Defendant's are liable as assignee and third party beneficiary. Furthermore, this issue is a matter of fact and cannot rightly be ruled upon in a Motion to Dismiss.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

ABDALLAH LAW GROUP

Dated:  July 06, 2010            ___/s/Mitchell L. Abdallah_____
                                 Mitchell L. Abdallah,
                                 Attorney for Plaintiff Lillie Mae Washington